UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Court File No. 26-mj-00077 (SRN/ECW) |
| Plaintiff, | |
| v. | **DEFENDANT'S MOTION FOR AN ORDER TO SHOW CAUSE AND MOTION FOR RULE 16 DISCOVERY, A PROTECTIVE ORDER, AND AN EVIDENTIARY HEARING** |
| Kirubele Adbebe, | |
| Defendant. | |

Defendant Kirubele Adbebe respectfully moves the Court for an Order to Show Cause why the Government should not be held in contempt and why the Court should not sanction the Government under the Court's inherent authority for violating the Court's sealing order by publishing an inflammatory "press release" about Mr. Adbebe while the case was under seal and for providing the Court with pretextual, untrue statements that formed the basis on which it claimed to be filing the sealing order. Mr. Adbebe also moves for expedited discovery, a protective order, and an evidentiary hearing under Federal Rule of Criminal Procedure 16, for the reasons stated below.

## **INTRODUCTION**

On January 26, 2026, Kirubele Adbebe, who participated in protests at the Whipple Building in St. Paul, Minnesota, was charged by Complaint with a felony offense under 18 U.S.C. § 111(a) for one reason: to facilitate an elaborate publicity stunt by the Department of Justice intended to deter other protestors from engaging in constitutionally protected speech in response to the government's unlawful execution of Operation Metro Surge.

Importantly, the Government decided to seek a court order sealing the Complaint and all its supporting documents, including the affidavit in support of the Complaint. Dkt. 3. The Court granted the Government's motion and sealed the case. Dkt. 4.

But in a complete departure from typical and ethical Department of Justice policies and procedures, the Government then chose to violate the Court's sealing order by orchestrating a staged photograph of Mr. Adbebe in shackles and posting it on the official X account of the United States Attorney General, Pamela Bondi, along with the photographs of 10 other charged individuals and the names of Mr. Adbebe and 15 other individuals, with inflammatory statements that Mr. Adbebe and the others are "rioters," and threatening that there would be "more arrests to come."

The U.S. Department of Homeland Security ("DHS")—the agency whose agent swore out the Complaint filed under seal—echoed Attorney General Bondi's post and took it several steps further. Again including Mr. Adbebe's name and staged photographs, DHS called Mr. Adbebe and the other charged individuals "anarchists" who are "fighting to keep rapists, murders [sic], drug dealers, and predators in their community." These statements about Mr. Adbebe are false and were intended to create a false impression of Mr. Adbebe. Like Attorney General Bondi, DHS threated that "arrests [would] continue for anyone who assaults or impedes law enforcement."

Since the posting of these inflammatory and unethical statements—which may impede Mr. Adbebe's opportunity to receive a fair trial—the Government has taken steps that make clear their intent to use Mr. Adbebe's and other defendants' charges simply to intimidate other, lawful protestors. Lacking evidence to support their charges—or in many

2

instances, in the face of evidence directly contradicting their charges—the Government has now entirely dismissed at least six of the cases against the sixteen defendants appearing in their X posts and downgraded the balance of the charges to misdemeanors.

A court order sealing a criminal case is not a suggestion, and the Court has the authority to impose civil contempt for the Government's disobedience in distributing information subject to the Order to more than three million viewers. The Department of Justice has abused these judicial proceedings for a purely political act without sufficient consideration of Constitutional or ethical restraints on the Department of Justice. The Court has both the authority and the obligation to protect the fairness and dignity of the proceedings before it. When the Government uses publicity tactics that violate a court order, intimidate the accused and potential witnesses, and undermine confidence in the judicial process, the Court may act to stop the harm, require accountability, and impose remedial measures. The Court should order the Government to show cause why sanctions and other curative relief are not warranted for the Government's flagrant violation of its order sealing Mr. Adbebe's case. In conjunction with this, the Court should order expedited discovery on this issue, impose a protective order, and order an evidentiary hearing.

## **BACKGROUND**

In December 2025, the federal government initiated Operation Metro Surge, which involved an unprecedented deployment of federal immigration enforcement personnel into Minnesota's Twin Cities and the surrounding areas. *Minnesota by & through Ellison v. Noem*, No. 26-CV-190 (KMM/DJF), 2026 WL 253619, at *1 (D. Minn. Jan. 31, 2026). Under the guise of immigration enforcement, thousands of heavily armed, masked, and

poorly trained federal agents invaded Minnesota streets, purportedly to seek out violent criminals who were in the United States illegally. *E.g.*, 1st Am. Compl. at ¶ 99, *Tincher v. Noem*, No. 0:25-CV-4669 (KMM/DTS). But that thin veneer quickly wore off when it became clear that the purpose of Metro Surge was not to root out violent criminals, but to arrest and detain Minnesotans regardless of citizenship or criminal history.[1] Compl. at ¶¶ 68, 71, *Minnesota by & through Ellison v. Noem*, No. 26-CV-190 (KMM/DJF). Countless protests occurred around Minnesota and around the country in response to Metro Surge.

The Bishop Henry Whipple Federal Building ("Whipple") quickly became a focal point of the unrest because it serves as a central detention and processing site for Metro Surge. Protesters have gathered at Whipple for numerous reasons. These include protests against the illegal detention of U.S. citizens, *see* Compl. at ¶¶ 72, 73, *Ellison*, No. 26-CV-190 (KMM/DJF), detainees being isolated from their attorneys and rapidly transferred out of state, *Advocs. for Hum. Rts. v. U.S. Dep't of Homeland Sec.*, No. 26-CV-749 (NEB/DLM), 2026 WL 404457, at *1, 3 (D. Minn. Feb. 12, 2026), and unsanitary and inhumane conditions at Whipple, *id.* at *5. Whatever the reason, protesters at Whipple have been subject to numerous abuses at the hands of federal agents, including teargas, firearms pointed directly at protesters' faces, physical aggression and violence like pushing and tackling, pepper spray, less-than-lethal munitions, and baseless, reactionary arrests. *Id.* 1st Am. Compl. at ¶ 127, *Tincher*, No. 0:25-CV-4669 (KMM/DTS) ¶¶ 123, 127, 128, 274.

---

[1]    *E.g.*, Donald J. Trump, Truth Social (Jan. 13, 2026, 7:40 AM), https://truthsocial.com/@realDonaldTrump/posts/115888070937502023 (telling Minnesotans that "THE DAY OF RECKONING & RETRIBUTION IS COMING").

Despite federal agents' undisciplined and unconstitutional conduct, Whipple has become a continuous subject of Minnesotans exercising their First Amendment right to protest. *Tincher v. Noem*, No. 0:25-CV-4669 (KMM/DTS), 2026 WL 125375, at *14 (D. Minn. Jan. 16, 2026).

On January 13, 2026, Mr. Adbebe was exercising his First Amendment right to protest at Whipple.[2] Dkt. 1-1 ¶ 5. While there, Mr. Adbebe allegedly spat at a moving vehicle, kicked a vehicle's tires, and opened the trunk of a vehicle. *Id.* In response, over a dozen Federal Protective Servies ("FPS") and Special Response Team ("SRT") agents swarmed Mr. Adbebe to detain him. *See* FOX9.com, *Anti-ICE protests in Minneapolis get heated, person detained*, Jan. 13, 2026, https://www.fox9.com/video/fmc-zrc7zrjs8my9e2w6 (last viewed Feb. 26, 2026) (the "FOX9 Video"). The Probable Cause statement filed with the Court stated that "upon contact," Mr. Adbebe "refused repeated commands to stop resisting and place his hands behind his back" and then states that, "SRT personnel deployed chemical munitions." Dkt. 1-1 ¶ 6. This is demonstrably false as shown by video evidence. As agents approached Mr. Adbebe, he stood with his hands up, palms facing the officers. At the 0:07 mark of the FOX9 Video, an agent is heard yelling, "Get on the ground, you [inaudible], get on the ground!" as several agents tackled Mr. Adbebe. FOX 9 Video. At the 0:10 mark of the FOX9 Video, an agent fired a chemical munitions cannister that landed near Mr. Adbebe's head. *Id.* At no point is an agent heard telling Mr.

---

[2] Factual background taken from the Affidavit in Support of Criminal Complaint in this case is not an admission of the truth of any of the allegations contained therein.

Adbebe to stop resisting or to place his hands behind his back before the chemical munitions are fired, despite the sworn statement indicating otherwise. *Compare* Dkt. 1-1 ¶ 6 *with* FOX9 Video. After tackling Mr. Adbebe and immediately using chemical munitions on him, multiple agents knelt on Mr. Adbebe's back as they placed him in handcuffs.[3] Dkt. 1-1 ¶ 6. Mr. Adbebe was then forced into a vehicle and driven to another location, where he was forcibly removed from the vehicle. *Id.*, ¶ 7. While three FPS agents held the handcuffed Mr. Adbebe against the side of a vehicle, Mr. Adbebe allegedly "forcibly spit" on an FPS supervisor's forearm. *Id.*

On January 26, 2026, weeks later and after a Vice Presidential visit to Minneapolis where he complained about protests,[4] the Department of Justice sought a felony complaint charging Mr. Adbebe with violating 18 U.S.C. § 111(a)(1). Dkt. 1. The Government also petitioned the Court to seal documents, including the Complaint, Arrest Warrant, and the supporting Affidavit. Dkt. 3. The Government's petition articulated several reasons that it

---

[3] Despite numerous agents already kneeling on Mr. Adbebe and no danger to those agents, another agent forcibly drove his knee into Mr. Adbebe, as shown at the 0:43 mark of the video. FOX9 Video. This was clearly not done for apprehension purposes because that agent does not assist in any way in the cuffing of Mr. Adbebe, instead using Mr. Adbebe's body to brace himself as he points his firearm at other protesters. *Id.* at 0:49–1:10. This fact does not appear in the Probable Cause statement. *See* Dkt. 1-1.

[4] *See* Michelle L. Price, et al., *Vance's message in Minneapolis: Local officials must cooperate with the immigration crackdown*, ASSOCIATED PRESS (Jan. 22, 2026), https://apnews.com/article/vance-ice-minneapolis-deportations-trump-economy-002f1d1acf05c00aeee289ec192100e7 (last visited, Mar. 11, 2026) ("Vance also praised the arrest of protesters[.]")

needed a sealing order. For one, the Government represented to the Court that nondisclosure was "necessary to prevent the ongoing investigation from being compromised." *Id.* ¶ 4. But there was no ongoing investigation. Next, the Government stated that the seal was necessary "for the safety of officers . . . who will be effecting the arrest of the defendants [sic]." *Id.* But Mr. Adbebe was never arrested; law enforcement called Mr. Adbebe and told him to appear, and he then voluntarily self-surrendered. No officer effected his arrest. And the most egregious of the Government's misrepresentations to the Court was that:

> The documents also contain identifying information of, and circumstances relating to, an individual or individuals allegedly involved in criminal activity in some way who may not be indicted in this case. Nondisclosure of the documents at this stage is also necessary to protect their identity and/or to minimize the substantial risk that revelation of details set forth in the documents could cause to their reputation.

*Id.* ¶ 5. The only individual identified in the documents the Government requested to be sealed was Mr. Adbebe, who was not indicted in this case. *See* Dkts.1, 1-1, 2. That same day, the Court granted the Government's petition to seal documents, finding that the Government had shown good cause. Dkt. 4.

On January 28, 2026, Mr. Adbebe self-reported to the federal courthouse in St. Paul for his initial appearance on the sealed federal Complaint.  Agents placed Mr. Adbebe in leg shackles and posed him for a photograph next to a federal agent.  Ex. A. The photograph is a head-to-toe image of Mr. Adbebe, with the leg shackles clearly visible, and with an agent next to Mr. Adbebe wearing a jacket with "Police HSI" printed on the back, standing with his back to the camera. *Id.* There are no indications that this was a booking photo. *Id.*

On January 28, 2026, at 12:53 PM—with the Court's seal order in full effect—Attorney General Pamela Bondi made several posts on X (f/k/a Twitter) related to her travel to Minneapolis.[5] Ex. B. In her posts, Bondi stated that "[f]ederal agents have arrested 16 Minnesota rioters . . . who have been resisting and impeding [the Government's] federal law enforcement agents." *Id.* Tied to this post, Bondi posted the names of those she had called "rioters," which included Mr. Adbebe's name. At 1:12 PM, Attorney General Bondi posted the staged photograph of Mr. Adbebe in shackles.[6] *See* Ex. A. She also included with her tweets a series of staged photographs showing detainees—presumably those individuals named in her 12:53 PM post—posed in the same or similar manner as Mr. Adbebe had been posed. Ex. C.  To date, these tweets have been viewed over 3 million times each. *See* Exs. A, B.

This coordinated media campaign to smear U.S. citizens for exercising their First Amendment rights, without regard for a sealing order, made plain the true nature of the Department of Justice's desire to seek a sealing order on January 26: to permit this coordinated media campaign.  This is not a legitimate effort, nor was it one of the proffered bases upon which the Department sought the order, all of which were pretextual.

---

[5] Pamela Bondi (@AGPamBondi), X (formerly Twitter) (Jan. 28, 2026, at 12:53 PM), https://x.com/AGPamBondi/status/2016585421027754465 (last visited Feb. 23, 2026).

[6] Pamela Bondi (@AGPamBondi), X (formerly Twitter) (Jan. 28, 2026 at 1:12 PM), https://x.com/AGPamBondi/status/2016590156489183503/photo/1 (last viewed Feb. 23, 2026).

From 3:51 to 3:55 PM, Mr. Adbebe made his initial, individual appearance. Dkt. 6. The Government moved to unseal the case, and the Court granted the motion. *Id.* The Honorable Dulce J. Foster noted that she was "deeply disturbed" by Attorney General Bondi's posts. Ex. D. Then, at 3:57 PM, the official DHS X account made a post labeling the arrestees, including Mr. Adbebe, as "anarchists . . . fighting to keep rapists, murders [sic], drug dealers, and predators in their community."[7] Ex. E. Included with this post was Mr. Adbebe's staged photograph, which had been captioned with Mr. Adbebe's name above the words "***ARRESTED:*** ASSAULT, SPITTING ON OFFICER"—details only available in the complaint which had been unsealed minutes prior. Ex. F.

Since the Attorney General and DHS posted their inflammatory and unethical statements, the Government has taken steps in these cases that have made even clearer that their primary intent was to use charges and a coordinated media campaign to intimidate lawful protestors. Lacking evidence to support their charges—or in many instances, in the face of evidence directly contradicting their charges—the Government has now entirely dismissed at least six of the cases against the sixteen defendants appearing in their X posts and downgraded the balance of the charges to misdemeanors.[8] This Court has recognized

---

[7] Homeland Security (@DHSgov), X (formerly Twitter) (Jan. 28, 2026, at 3:57 PM), https://x.com/DHSgov/status/2016631681872961598 (last viewed Feb. 25, 2026).

[8]    Susan Du, *Charges dropped against three Minnesotans accused of assaulting federal agents*, MINN. STAR TRIB. (Feb. 25, 2026) https://www.startribune.com/charges-dropped-against-three-minnesotans-accused-of-assaulting-federal-agents/601588422 ("The new dismissals are in addition to at least three other instances of protestors who had charges dismissed in January and February").

the impropriety of the Government's conduct in staging and disseminating photos of the protestors,[9] who are presumed innocent, *see Meyers v. Roy*, No. CIV. 11-291 ADM/TNL, 2012 WL 28122, at *4 (D. Minn. Jan. 5, 2012), *aff'd,* 714 F.3d 1077 (8th Cir. 2013), and who must now grapple with the privacy violation and personal safety concerns that stem from the Government's unethical conduct.

**ARGUMENT**

**MOTION TO SHOW CAUSE**

"Federal law authorizes the Court to impose civil contempt for disobedience of a court order." *Data Axle, Inc. v. CFM Data Network, LLC*, No. 23-CV-3255 (LMP/DLM), 2025 WL 1261228, at *3 (D. Minn. May 1, 2025) (citing 18 U.S.C. § 401(3)). "A court may also impose sanctions pursuant to its inherent authority to punish 'conduct which abuses the judicial process.'" *VanDanacker v. Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1046 (D. Minn. 2000) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45, (1991)).

**I.     The Government's Social Media Perp-Walk Violated the Seal Order.**

The Government violated the Court's seal order by publicizing Mr. Adbebe's name and staged perp-walk photo while the charging documents were sealed. "In a proceeding

---

[9]     Chelsia Rose Marcius & Lauren McCarthy, *Judge Scolds Bondi for Publishing Photos of Protesters on Social Media*, NEW YORK TIMES (Jan. 28, 2026) http://nytimes.com/2026/01/28/us/ice-protest-photos-bondi-social-media.html (noting the Court's statements that "[t]his conduct is not something that the court condones" and that the Court was "deeply disturbed" by Attorney General Bondi publishing photos of certain defendants on social media).

before a magistrate judge, disobedience of a lawful order shall constitute a contempt of the district court for the district wherein the magistrate is sitting." *Chicago Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 504 (8th Cir. 2000) (quotations omitted). The moving party must show contempt by clear and convincing evidence, and that the party allegedly in contempt had knowledge of the order at issue—then the burden shifts to the nonmoving party to show an inability to comply. *Data Axle, Inc. v. CFM Data Network, LLC*, No. 23-CV-3255 (LMP/DLM), 2025 WL 1261228, at *3 (D. Minn. May 1, 2025).

Here, the Government used an official's public platform to stage and publish a manufactured arrest photograph and pair it with Mr. Adbebe's name—functionally defeating the Court's seal order by disseminating that information to over 3 million people. This, despite the Government's good cause showing which included that the seal was intended to "protect [Mr. Adbebe's] identify and/or to minimize the substantial risk" to his reputation. Dkt. 3 ¶ 5. It is undisputable that the Government took affirmative steps to create and post this information, and undisputable that its public posting destroys any "protection" for Mr. Adbebe sought through the Government's petition for the seal.

The Government will likely argue that the seal order only sealed the documents filed in this matter, and that it did not expressly prohibit the posting of Mr. Adbebe's name or likeness. But contempt is not limited to situations where an order includes an itemized list of prohibited tactics. The relevant question is whether the Government's conduct—viewed in context—constituted noncompliance with the Court's order. *See City of Campbell, Mo. v. Arkansas-Missouri Power Co.*, 65 F.2d 425, 427 (8th Cir. 1933) (party is guilty of civil contempt if it violates "the letter *or* spirit" of a court order (emphasis added)); *see also Epic*

11

*Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1180 (9th Cir. 2025) (party "does not have an immunity from civil contempt because the plan or scheme which it adopted was not specifically enjoined" (citation modified)).

The context matters here. The Government's good cause showing in its own sealing petition invoked concerns about public identification and/or reputational damage to Mr. Adbebe. The Government cannot legitimately claim that it had no knowledge of its own petition. Moreover, having persuaded the Court to seal on its stated rationale, the Government cannot now treat the absence of a specific restriction on name/photo publication as permission to do the very thing it told the Court sealing would prevent. In other words, in its representation to the Court, the Government raised concerns over the same issues it caused with its propagandistic perp-walk social media campaign. And in the broader context of Operation Metro Surge, the Government has shown a stunning pattern of ignoring or blatantly disobeying court orders. *See Juan T.R. v. Noem*, No. 26-CV-0107 (PJS/DLM), 2026 WL 555601, at *2 (D. Minn. Feb. 26, 2026) (Judge Schiltz detailing the 210 orders the Government had violated in 143 cases in connection with Operation Metro Surge).

"Civil contempt may be employed either to coerce the [noncompliant party] into compliance with a court order or to compensate the complainant for losses sustained, or both." *Chicago Truck Drivers*, 207 F.3d at 505. On this record, the Government's publication of a manufactured arrest photograph and the defendant's name in a post that labels Mr. Adbebe as a "rioter" accomplished the public identification harm that the seal order was entered to prevent. The Government had clear knowledge of the order, and it

12

cannot reasonably show that it is unable to refrain from disseminating propaganda through social media.

Accordingly, the Court should order the Government to show cause for why it should not be held in contempt for violation of the seal order. Should the Government be held in contempt, the Court should enforce its seal order in a manner that preserves its practical effect and compensate Mr. Adbebe accordingly—at a minimum, by forcing the Government to take down its social media posts relating to Mr. Adbebe and fining the Government for failure to remove them immediately.

## II. Even Apart from the Seal Order, the Court Should Sanction the Government Under its Inherent Authority for Misconduct that Abuses the Judicial Process.

The Government's tweets were not neutral docket notices or unavoidable disclosures, but rather, a deliberate and government-created publicity event: a staged custody photo, paired with Mr. Adbebe's name, and distributed through the United States Attorney General's and DHS's official social media accounts. Because these tactics inappropriately announced Mr. Adbebe's guilt and potentially intimidated witnesses, sanctions are appropriate. *See Fredin v. Middlecamp*, No. 17-CV-03058 (SRN/HB), 2020 WL 6867424, at *11 (D. Minn. Nov. 23, 2020), *aff'd,* 855 F. App'x 314 (8th Cir. 2021) (imposing sanctions against party for creating websites intimidating and disparaging other litigants and their counsel); *United States v. Bowen*, 799 F.3d 336, 350 (5th Cir. 2015) (imposing sanctions when prosecutors posted online comments that spoke to the guilt of defendants).

Sanctions under the Court's inherent power are appropriate when a party's conduct "abuses the judicial process" and is "tantamount to bad faith." *Snowden v. Time Safe, Inc.*, No. CIV. 10-4516 JNE/JJG, 2012 WL 2569052, at *3 (D. Minn. May 30, 2012), *report and recommendation adopted*, No. CIV. 10-4516 JNE/JJG, 2012 WL 2571206 (D. Minn. July 3, 2012). Here, the facts support that threshold because the Government's conduct was deliberate as evidenced by the staged photos, was amplified on a high-ranking official's social media account, and was foreseeably harmful to the fairness and dignity of the proceedings.

The Government's bad faith is evident from the significant departure from the Department of Justice's own practices for the ethical distribution of information regarding criminal charges. The Department of Justice's usual practice when posting information or issuing press releases about charges against defendants has previously been to remind the audience that "[a] complaint is merely an allegation and the defendant is presumed innocent until proven guilty beyond a reasonable doubt in a court of law."[10] This is consistent with the DOJ's Justice Manual, which states that "[a] news release issued before a finding of

---

[10] In *United States v. River Smith,* 23-cr-7 (DSD/JFD), the defendant was charged by Complaint for attempting to obtain illegal weapons with the express purpose, documented in communications, of killing law enforcement officers. The U.S. Attorney's Office for the District of Minnesota issued a press release after the Complaint and supporting documents were unsealed, reminding the audience of the presumption of innocence where the defendant was charged by Complaint for attempting to obtain illegal weapons with the express purpose of killing law enforcement officers. *See* United States Attorney's Office, District of Minnesota, *Savage Man Arrested, Charged with Possession of Machine Gun and Attempted Possession of Hand Grenades* (Dec. 15, 2022), https://www.justice.gov/usao-mn/pr/savage-man-arrested-charged-possession-machine-gun-and-attempted-possession-hand-grenad-0 (last visited Feb. 23, 2026).

guilt should state that the charge is merely an accusation, and the defendant is presumed innocent until proven guilty." Department of Justice, Justice Manual, § 1-7.500. Here, however, the head of the Department of Justice took to social media to post—to her 1.1 million followers[11] and beyond—the name and image of Mr. Adbebe in connection with this case. Not only that, but she labeled Mr. Adbebe a "rioter . . . who [has] been resisting and impeding" federal law enforcement agents. Ex. B. This statement is breathtakingly inappropriate, by not only classifying Mr. Adbebe as a "rioter" (a crime he was not charged with), but by stating as fact that he was "resisting and impeding" federal agents—which are related elements of the crime that he has been charged with. *See* 18 U.S.C. § 111(a) (making it a crime to forcibly resist or forcibly impede government agents).

Now, Mr. Adbebe is on notice that the Government will not hesitate to publicize information about him and his case—true or not. This could certainly have an impact on whether witnesses are willing to come forward or testify in this case. *See Garcia v. Bertsch*, 470 F.3d 748, 750 (8th Cir. 2006) (acknowledging witnesses' reluctance to testify when presented with "spectacle" and "repercussions").

The Government should be ordered to show cause why the Court should not find misconduct warranting inherent-authority sanctions. If it does, Attorney General Bondi should be required to remove the offending posts from social media. *Fredin*, 2020 WL

---

[11]   Attorney General Pamela Bondi (@AGPamBondi), X (formerly Twitter), https://x.com/AGPamBondi (last visited Feb. 23, 2026).

6867424, at *12 (ordering party to remove all offending videos and websites from the internet and enjoining reposting).

## FED. R. CRIM. P. 16 MOTION FOR DISCOVERY, PROTECTIVE ORDER, AND EVIDENTIARY HEARING

Federal Rule of Criminal Procedure 16 provides that "the government must permit the defendant to inspect and to copy or photograph" documents and objects "within the government's possession, custody, or control" and that are "material to preparing the defense." Rule 16 further permits the Court to grant "appropriate relief" regarding discovery, including issuing a protective order, "for good cause." *Id.* The Government's taking, use, and dissemination of the staged photo of Mr. Adbebe had no legitimate law enforcement purpose. Instead, the timing of the photo's dissemination and its use on Government social media evidence that the Government charged Mr. Adbebe to deter and intimidate other protestors and to promote the consequences of Metro Surge. Information related to the photo's staging, taking, and dissemination is therefore material to Mr. Adbebe's defense, and the Government must produce it.

The Government's unethical disclosure of the staged photo of Mr. Adbebe is directly contrary to federal policies, which provide that "[d]epartmental representatives should not make available photographs of a defendant unless a law enforcement function is served thereby." 28 C.F.R. § 50.2; *see Detroit Free Press Inc. v. United States Dep't of Justice*, 829 F.3d 478, 484 (6th Cir. 2016) (holding that "[i]ndividuals enjoy a non-trivial privacy interest in their booking photos, and citing "the *federal* regulations and policies drafted by the U.S. Department of Justice and the [United States Marshal Service] . . .

16

prevent[ing] mug-shot disclosure absent a law-enforcement purpose" (emphasis original)). In accordance with this policy, the USMS releases "photographs of fugitives or other prisoners *only for law enforcement purposes*." *Booking Photographs Disclosure Policy*, U.S. Marshals Serv. Off. Gen. Counsel, 1, https://www.usmarshals.gov/sites/default/files/media/document/booking-photography-disclosure-policy.pdf (last accessed Feb. 25, 2026) (emphasis added).

The USMS also prohibits its employees from "pos[ing] prisoners for pictures," "subject[ing] prisoners to embarrassment," or "disclos[ing] . . . photographs of prisoners." *Prisoner Photographs*, U.S. Marshals Serv. https://www.usmarshals.gov/what-we-do/prisoners/operation/prisoner-guideline/prisoner-photographs (last accessed Feb. 25, 2026). To this end, USMS, itself, "has consistently taken the position that booking photographs implicate personal privacy and should not be released under the [Freedom of Information Act] unless a countervailing public interest is involved." *Booking Photographs Disclosure Policy* at 2 (noting a privacy interest in booking photos "has recently been affirmed by two U.S. Courts of Appeals in decisions upholding USMS's refusal to release booking photographs in response to FOIA requests").

There was no legitimate law enforcement purpose for publicizing the photo of Mr. Adbebe to millions of X users through the Attorney General and DHS X accounts. Instead, the public dissemination of that photo—as the Government's agencies have recognized in their own internal policies and memorandum—invades Mr. Adbebe's privacy interests and puts his personal safety at risk from those who might feel emboldened by the Government's propaganda against protestors, and who now know his name and

appearance. *Cf.* 5 U.S.C. § 552(b)(7) (exempting "records or information compiled for law enforcement purposes" from FOIA disclosure requirements to the extent that such disclosure "would deprive a person of a person of a right to a fair trial," "could reasonably be expected to constitute an unwarranted invasion of personal privacy," or "*could reasonably be expected to endanger the life and physical safety of any individual*" (emphasis added)). Unfortunately, given the permanency of information shared on social media, such harm cannot truly be undone, but the Court should take appropriate action to prevent any further harm, as set forth below.

**MOTION FOR DISCOVERY**

Defendant moves for the following expedited relief pursuant to Federal Rule of Criminal Procedure 16.

(1)     Disclosure of the identity of any DHS agents, U.S. Marshal personnel, or other government personnel who participated, took, or appeared in the staged photo of Mr. Adbebe after his self-surrender;

(2)     Disclosure of any communications by any officials at the Department of Justice or DHS regarding the publication of Mr. Adbebe's photo by Attorney General Bondi's X account or DHS's X account, or the timing of Mr. Adbebe's charging and self-surrender.

**MOTION FOR A PROTECTIVE ORDER**

Mr. Adbebe further moves this Court for a Protective Order pursuant to Fed. R. Crim. P. 16(d) ordering that any photographs of Mr. Adbebe, including the staged photograph, not be disseminated or shared, either privately or publicly, by the United States or its officers and agents. Mr. Adbebe respectfully requests that the Court order that to the extent that any officer or agent of the United States has posted photographs of Mr. Adbebe

on social media, including but not limited to publication on those officials' X accounts, that said photographs be removed from the respective social media accounts within three days of any Court order and no further publication occur.

## MOTION FOR EVIDENTIARY HEARING

Finally, Mr. Adbebe moves for an evidentiary hearing regarding his motions to determine both the extent of the privacy violations identified herein as well as the impetus behind such violations. Such information and evidence is relevant to the above motions. Such information also falls within the Court's *Brady* order issued in this case. *See* Dkt. No. 7. Mr. Adbebe requests that this evidentiary hearing be scheduled for the same date and time as his motions hearing. Mr. Adbebe further requests that the Court order the appearance at the hearing of any individuals identified pursuant to the above-described discovery request, as well as any personnel tasked with responding or gathering information related to the above-listed discovery requests.

## CONCLUSION

Defendant Kirubele Adbebe respectfully requests that the Court order the Government to show cause for why it should not be held in contempt for violation of the sealing order in this case and why it should not be sanctioned under the Court's inherent authority. In conjunction, Mr. Adbebe respectfully requests the Court order expedited discovery, a protective order, and an evidentiary hearing relating to the Government's social media posts in question.

19

Dated:  March 11, 2026

*/s/ Manda M. Sertich*

Manda M. Sertich (#0504328)
Christopher J. Markuson (0504387)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street
Suite 1500
Minneapolis, MN  55402-4400
Minneapolis, MN  55402-4400
612.492.7000
msertich@fredlaw.com
cmarkuson@fredlaw.com

***Attorneys for Defendant***