UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

KIRUBELE ADBEBE,

Defendant.

Court File No. 26-mj-00077 (SRN/ECW)

**DEFENDANT'S RESPONSE TO MOTION TO DISMISS**

On April 15, 2026, the Government moved to Dismiss the above-captioned case without prejudice. Dkt. 56.  Defendant Kirubele Adbebe, through his undersigned counsel, respectfully responds to consent to the dismissal of the case but to seek dismissal of the case with prejudice based on the Government's failure to articulate a reason for dismissal and the potential for future harassment of Mr. Adbebe via re-prosecution.

**BACKGROUND**

On January 13, 2026, Mr. Adbebe was exercising his First Amendment right to protest at the Bishop Henry Whipple Federal Building in St. Paul, Minnesota. Dkt. 1-1 ¶ 5.[1] While there, Mr. Adbebe allegedly spat at a moving vehicle, kicked a vehicle's tires, and opened the trunk of a vehicle. *Id.*  In response, over a dozen Federal Protective Servies ("FPS") and Special Response Team ("SRT") agents swarmed Mr. Adbebe to detain him. *See* FOX9.com, *Anti-ICE protests in Minneapolis get heated, person detained*, Jan. 13,

---

[1] Factual background taken from the Affidavit in Support of Criminal Complaint in this case is not an admission of the truth of any of the allegations contained therein.

2026, https://www.fox9.com/video/fmc-zrc7zrjs8my9e2w6 (last viewed Feb. 26, 2026) (the "FOX9 Video"). The Probable Cause statement filed with the Court stated that "upon contact," Mr. Adbebe "pull[ed] away from [a federal agent] and refused repeated commands to stop resisting and place his hands behind his back" and then states that, "SRT personnel deployed chemical munitions." Dkt. 1-1 ¶ 6. This is demonstrably false as shown by video evidence. As agents approached Mr. Adbebe, he stood with his hands up, palms facing the officers. At the 0:07 mark of the FOX9 Video, an agent is heard yelling, "Get on the ground, you [inaudible], get on the ground!" as several agents tackled Mr. Adbebe. FOX 9 Video. At the 0:10 mark of the FOX9 Video, an agent fired a chemical munitions cannister that landed near Mr. Adbebe's head. *Id.* At no point is an agent heard telling Mr. Adbebe to stop resisting or to place his hands behind his back before the chemical munitions are fired, despite the sworn statement indicating otherwise. *Compare* Dkt. 1-1 ¶ 6 *with* FOX9 Video. After tackling Mr. Adbebe and immediately using chemical munitions on him, multiple agents knelt on Mr. Adbebe's back as they placed him in handcuffs. Dkt. 1-1 ¶ 6. Mr. Adbebe was then forced into a vehicle and driven to another location, where he was forcibly removed from the vehicle. *Id.*, ¶ 7. While three FPS agents held the handcuffed Mr. Adbebe against the side of a vehicle, Mr. Adbebe allegedly "forcibly spit" on an FPS supervisor's forearm. *Id.*  Mr. Adbebe was released the same day.

On January 26, 2026, weeks later and after a Vice Presidential visit to Minneapolis where Vice President Vance complained about protests,[2] the Department of Justice sought

---

[2] *See* Michelle L. Price, et al., *Vance's message in Minneapolis: Local officials must cooperate with the immigration crackdown*, ASSOCIATED PRESS (Jan. 22, 2026),

a felony complaint charging Mr. Adbebe with forcibly assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1). Dkt. 1. The Government also petitioned the Court to seal documents, including the Complaint, Arrest Warrant, and the supporting Affidavit. Dkt. 3. The Government's petition articulated several reasons that it needed a sealing order. For one, the Government represented to the Court that nondisclosure was "necessary to prevent the ongoing investigation from being compromised." *Id.* ¶ 4. But there was no ongoing investigation; Mr. Adbebe's phones were seized the day of his arrest, and the discovery materials disclosed to the defense contain no indications of investigation between the day of Mr. Adbebe's arrest of the filing of the Petition to Seal Documents. Next, the Government stated that the seal was necessary "for the safety of officers . . . who will be effecting the arrest of the defendants [sic]." *Id.* But Mr. Adbebe was never arrested; law enforcement contacted Mr. Adbebe via counsel the very next day and told him to appear, and he then voluntarily self-surrendered. No officer effected his arrest. And the most egregious of the Government's misrepresentations to the Court was that:

> The documents also contain identifying information of, and circumstances relating to, an individual or individuals allegedly involved in criminal activity in some way who may not be indicted in this case. Nondisclosure of the documents at this stage is also necessary to protect their identity and/or to minimize the substantial risk that revelation of details set forth in the documents could cause to their reputation.

---

https://apnews.com/article/vance-ice-minneapolis-deportations-trump-economy-002f1d1acf05c00aeee289ec192100e7 (last visited, Mar. 11, 2026) ("Vance also praised the arrest of protesters[.]")

*Id.* ¶ 5. The only individual identified in the documents the Government requested to be sealed was Mr. Adbebe, who was not indicted in this case. *See* Dkts.1, 1-1, 2. That same day, the Court granted the Government's Petition to Seal Documents, finding that the Government had shown good cause for sealing. Dkt. 4.

As previously noted, on January 27, 2026, Mr. Adbebe was contacted by law enforcement via an attorney, asking him to self-surrender for an initial appearance the following day.  On January 28, 2026, Mr. Adbebe self-reported to the federal courthouse in St. Paul for his initial appearance on the sealed federal Complaint.  Agents placed Mr. Adbebe in leg shackles and posed him for a photograph next to a federal agent.  There was no reason—law enforcement-related or otherwise—to place Mr. Adbebe in shackles other than to stage the picture of him.[3]  The photograph is a head-to-toe image of Mr. Adbebe, with the leg shackles clearly visible, and with an agent next to Mr. Adbebe wearing a jacket with "Police HSI" printed on the back, standing with his back to the camera. There are no indications that this was a booking photo.

On the same day as Mr. Adbebe's initial appearance, on January 28, 2026, at 12:53 PM—with the Court's seal order still in full effect—then-United States Attorney General

---

[3] The photos and posts discussed herein were filed under seal as Exhibits to Mr. Adbebe's Motion for an Order to Show Cause and Motion for Rule 16 Discovery, a Protective Order, and an Evidentiary Hearing.  Dkt. 27, Exhibits A, B, C, E, F.

4

Pamela Bondi made several posts on X (f/k/a Twitter) related to her travel to Minneapolis.[4]

Dkt. 27, Ex. B. In her posts, Bondi stated:

> Federal Agents have arrested 16 Minnesota rioters for allegedly assaulting federal law enforcement – people who have been resisting and impeding our federal law enforcement agents.
>
> We expect more arrests to come.
>
> I've said it before and I'll say it again: nothing will stop President Trump and this Department of Justice from enforcing the Law.
>
> These are the names of those arrested today under 18 U.S. Code § 111 (Assaulting, resisting, or impeding certain officers or employees) . . . Kirubele Adbebe.

*Id.* At 1:12 PM, then-Attorney General Bondi posted the staged photograph of Mr. Adbebe in shackles.[5] *Id.* at Ex. A. She also included with her tweets a series of staged photographs showing detainees—presumably those individuals named in her 12:53 PM post—posed in the same or similar manner as Mr. Adbebe had been posed. *Id.* at Ex. C. To date, these tweets have been viewed over 3 million times each.

This coordinated media campaign to smear U.S. citizens for exercising their First Amendment rights, without regard for a sealing order, made plain the true nature of the Department of Justice's desire to seek a sealing order on January 26: to permit this coordinated media campaign. The Government used an official's public platform to stage

---

[4] Pamela Bondi (@AGPamBondi), X (formerly Twitter) (Jan. 28, 2026, at 12:53 PM), https://x.com/AGPamBondi/status/2016585421027754465 (last visited Feb. 23, 2026).

[5] Pamela Bondi (@AGPamBondi), X (formerly Twitter) (Jan. 28, 2026 at 1:12 PM), https://x.com/AGPamBondi/status/2016590156489183503/photo/1 (last viewed Feb. 23, 2026).

and publish a manufactured arrest photograph and pair it with Mr. Adbebe's name—improperly announcing Mr. Adbebe's guilt and functionally defeating the Court's sealing order by disseminating that information to over 3 million people.[6] This is not a legitimate

---

[6]   The Government's unethical disclosure of the staged photo of Mr. Adbebe is directly contrary to federal policies, which provide that "[d]epartmental representatives should not make available photographs of a defendant unless a law enforcement function is served thereby." 28 C.F.R. § 50.2; *see Detroit Free Press Inc. v. United States Dep't of Justice*, 829 F.3d 478, 484 (6th Cir. 2016) (holding that "[i]ndividuals enjoy a non-trivial privacy interest in their booking photos, and citing "the *federal* regulations and policies drafted by the U.S. Department of Justice and the [United States Marshal Service] . . . prevent[ing] mug-shot disclosure absent a law-enforcement purpose" (emphasis original)). In accordance with this policy, the USMS releases "photographs of fugitives or other prisoners *only for law enforcement purposes*." *Booking Photographs Disclosure Policy*, U.S. Marshals Serv. Off. Gen. Counsel, 1, https://www.usmarshals.gov/sites/default/files/media/document/booking-photography-disclosure-policy.pdf (last accessed Feb. 25, 2026) (emphasis added).

The USMS also prohibits its employees from "pos[ing] prisoners for pictures," "subject[ing] prisoners to embarrassment," or "disclos[ing] . . . photographs of prisoners." *Prisoner Photographs*, U.S. Marshals Serv. https://www.usmarshals.gov/what-we-do/prisoners/operation/prisoner-guideline/prisoner-photographs (last accessed Feb. 25, 2026). To this end, USMS, itself, "has consistently taken the position that booking photographs implicate personal privacy and should not be released under the [Freedom of Information Act] unless a countervailing public interest is involved." *Booking Photographs Disclosure Policy* at 2 (noting a privacy interest in booking photos "has recently been affirmed by two U.S. Courts of Appeals in decisions upholding USMS's refusal to release booking photographs in response to FOIA requests").

There was no legitimate law enforcement purpose for publicizing the photo of Mr. Adbebe to millions of X users through the Attorney General and DHS X accounts. Instead, the public dissemination of that photo—as the Government's agencies have recognized in their own internal policies and memorandum—invades Mr. Adbebe's privacy interests and puts his personal safety at risk from those who might feel emboldened by the Government's propaganda against protestors, and who now know his name and appearance. *Cf.* 5 U.S.C. § 552(b)(7) (exempting "records or information compiled for law enforcement purposes" from FOIA disclosure requirements to the extent that such disclosure "would deprive a person of a person of a right to a fair trial," "could reasonably be expected to constitute an

effort, nor was it one of the proffered bases upon which the Department sought the order, all of which were pretextual.

From 3:51 to 3:55 PM, Mr. Adbebe made his initial, individual appearance. Dkt. 6. The Government moved to unseal the case, and the Court granted the motion. *Id.* The Honorable Dulce J. Foster noted that she was "deeply disturbed" by then-Attorney General Bondi's posts. Dkt. 27 at Ex. D. Then, at 3:57 PM, the official DHS X account made a post labeling the arrestees, including Mr. Adbebe, as "anarchists . . . fighting to keep rapists, murders [sic], drug dealers, and predators in their community."[7] *Id.* at Ex. E. Included with this post was Mr. Adbebe's staged photograph, which had been captioned with Mr. Adbebe's name in bold print above the words "***ARRESTED:*** ASSAULT, SPITTING ON OFFICER"—details only available in the Complaint Affidavit which had been unsealed minutes prior.

---

unwarranted invasion of personal privacy," or "*could reasonably be expected to endanger the life and physical safety of any individual*" (emphasis added)).

The Government's bad faith is evident from the significant departure from the Department of Justice's own practices for the ethical distribution of information regarding criminal charges. The Department of Justice's usual practice when posting information or issuing press releases about charges against defendants has previously been to remind the audience that "[a] complaint is merely an allegation and the defendant is presumed innocent until proven guilty beyond a reasonable doubt in a court of law." This is consistent with the DOJ's Justice Manual, which states that "[a] news release issued before a finding of guilt should state that the charge is merely an accusation, and the defendant is presumed innocent until proven guilty." Department of Justice, Justice Manual, § 1-7.500.

[7] Homeland Security (@DHSgov), X (formerly Twitter) (Jan. 28, 2026, at 3:57 PM), https://x.com/DHSgov/status/2016631681872961598 (last viewed Feb. 25, 2026).

7

Since the former Attorney General and DHS posted their inflammatory and unethical statements, the Government has taken steps in these cases that have made even clearer that their primary intent was to use charges and a coordinated media campaign to intimidate lawful protestors.  On February 3, 2026, counsel for Mr. Adbebe appeared in the case, and a probable cause hearing was set for February 6, 2025, at which Mr. Adbebe's attorneys would have been able to cross-examine a Government witness regarding the allegations of the Complaint. Dkt. 13, 14.  The Court then scheduled the probable cause hearing for February 6.

But on February 5, 2026, the day before the probable cause hearing, the U.S. Attorney's Office filed a misdemeanor information, which resulted in the cancellation of the probable cause hearing where the Government's evidence would be presented. Dkt. 15, 17.

On February 19, 2026, Mr. Adbebe was arraigned. Dkt. 22.  Mr. Adbebe pleaded not guilty, as he was in fact innocent of the charges contained in the Information.  Counsel informed the Court that it would be filing a Motion for an Order to Show Cause why the Government should not be held in contempt for the social media posts, which violated the Court's sealing order.  The Court also required the Government to file a Bill of Particulars to identify what conduct constituted criminal conduct, to produce all discovery, and to disclose all text messages sent or received by law enforcement constituting *Brady* or *Giglio* material by February 26, 2026.  *See also* Dkt. 22.  The Court ordered that all non-dispositive motions be filed by March 11, 2026. *Id.*

The Government began producing discovery to the defense as ordered on February 26, which included some video surveillance evidence, but sought an extension of time to produce the text messages until March 4, 2026, and the motion was granted. Dkt. 24, 25. The Government filed its Bill of Particulars the same day, indicating that the violation of 18 U.S.C. § 111(a)(1) occurred when Mr. Adbebe allegedly *forcibly* spit on an FPS Inspector's forearm.

The Government continued to produce video surveillance discovery on a piecemeal basis, including on March 19, 2026, and March 27, 2026—two days after the Government represented to the Court in its response to Mr. Adbebe's pretrial motions that it did not believe there was any undisclosed evidence that Mr. Adbebe was entitled to based on constitutional or statutory authority. Dkt. 45 at 9, 10.[8]

On March 11, 2025, Mr. Adbebe filed his discovery motions, along with a Motion for an Order to Show Cause and Motion for Rule 16 Discovery, a Protective Order, and an Evidentiary Hearing. Based on discrepancies between the factual allegations set forth in the Complaint affidavit and the video of Mr. Adbebe's arrest, as well as the atypical process by which Mr. Adbebe was charged, included in his discovery motions Mr. Adbebe sought

---

[8]   It appears that only one video disclosed by the Government depicts the time period of the alleged forcible assault in a parking lot at the front of the Whipple building, but given the positioning of the camera and the vehicle Mr. Adbebe was transported in, there is no clear view of Mr. Adbebe and the federal agents at that time.  The rest of the videos depict events leading up to Mr. Adbebe's arrest near the front gate of the Whipple building, which appear to have been recorded by a drone camera.  In that footage, when agents emerge to arrest Mr. Adbebe, the drone footage appears to shift to the side and does not capture Mr. Adbebe's arrest.

disclosure of documents and communications between prosecutors and law enforcement agents related to charging decisions, as well as any draft affidavits prepared in anticipation of the potential charging of his case.

With respect to the Motion for an Order to Show Cause, Mr. Adbebe argued that the Government should be held in contempt and sanctioned under the Court's inherent authority for violating the Court's sealing order by publishing an inflammatory "press release" about Mr. Adbebe while the case was under seal and for providing the Court with pretextual, untrue statements that formed the basis on which it claimed to be filing the sealing order. Dkt. 27. Mr. Adbebe also moved for expedited discovery relating to the social media posts,[9] a protective order preventing the Government's further dissemination of the content of the social media posts, and an evidentiary hearing related to the social media posts. *Id.*

After seeking and receiving an extension of time to respond to Mr. Adbebe's Motion, the Government filed its response on April 1, 2026. Dkt. 47. The Government argued that the social media posts did not violate the Court's sealing order, that civil contempt is an inappropriate form of relief in this case, and that Mr. Adbebe had not

---

[9]     Mr. Adbebe sought: (1) disclosure of the identity of any DHS agents, U.S. Marshal personnel, or other government personnel who participated, took, or appeared in the staged photo of Mr. Adbebe after his self-surrender; and (2) disclosure of any communications by any officials at the Department of Justice or DHS regarding the publication of Mr. Adbebe's photo by Attorney General Bondi's X account or DHS's X account, or the timing of Mr. Adbebe's charging and self-surrender. Dkt. 27 at 18.

established a need for the court's inherent authority power to sanction.  The Government did not address the pretext involved in seeking the sealing order, made an extraordinary argument that the sealing order was not violated because the sealed records themselves were not disclosed via the then-Attorney General's social media posts, and argued that Mr. Adbebe's arrest was already public due to the video posted on the Fox News website, despite the fact that no identifying information regarding Mr. Adbebe, including his name or face or the nature of any charges against him, are revealed in the video. *Id.* at 1-2. The Government also argued that there was a legitimate law enforcement purpose of "general deterrence" in making the inflammatory posts, *id.* at 2, despite the fact that the posts violated both U.S. Department of Justice policy and USMS policy.

On April 14, 2026, the Magistrate Court held a hearing on both the discovery motions and on the Motion for an Order to Show Cause. Dkt. 52. The Government completely failed to *substantively* address the Magistrate Court's questions regarding whether the social media posts violated the sealing order, whether the factual allegations in the Complaint affidavit were consistent with the video of Mr. Adbebe's arrest, whether the social media posts violated Department of Justice or USMS policies, and whether Mr. Adbebe's rights to a fair trial were impacted by the social media posts.  As such, the Magistrate Court made the following rulings from the bench:[10]

---

[10]    The Magistrate Court indicated, both during the hearing and in subsequently-filed minutes (Dkt. 52), that a written order on its rulings would follow.  The defense here provides a summary of the Magistrate Court's rulings based on notes taken during the hearing and will of course defer to the rulings as reflected in any subsequent written order

- The Magistrate Court granted Mr. Adbebe's motion for discovery (Dkt. 34), ordering the government to disclose: (1) the identities of any agents or prosecutors who participated in taking or posting the photo of Mr. Adbebe; and (2) communications between Department of Justice personnel and law enforcement agents regarding publication of the photo of Mr. Adbebe and any related posts.

- The Magistrate Court granted in part Mr. Adbebe's motion for a protective order (Dkt. 35), prohibiting the Government from any further public or private dissemination of the photo of Mr. Adbebe.

- The Magistrate Court ordered additional briefing relating to the representations made in the sealing order and complaint affidavit.

- The Magistrate Court instructed the government to investigate and determine whether the statements in paragraphs 6 and 7 of the Complaint affidavit are consistent with video footage of Mr. Adbebe's arrest, so that if they are not consistent, the identity of the agent who provided the factual allegations in those paragraphs could be identified and any necessary Giglio disclosures could be made in future proceedings.

- The Magistrate Court ordered the government to provide the Magistrate Court with a log on an *ex parte* basis of all drafts of Complaint affidavits and communications about charging decisions, etc., that the Government would withhold from discovery based on an assertion of privilege.

- The Magistrate Court indicated that the motions for an evidentiary hearing, to remove the social media posts, contempt, and sanctions would be more appropriately addressed following the discovery ordered by the Court.

The Magistrate Court noted that with respect to the social media posts, the Government acted in a manner tantamount to bad faith, that the posts may impact Mr. Adbebe's right to a fair trial, and that the ordered discovery is material to Mr. Adbebe's defenses, including the defenses of vindictive prosecution and outrageous government conduct. The Magistrate Court stated that this is a very unfortunate situation for everyone,

---

or in the transcript of the hearing, which has been ordered on an expediated basis. The summary is not a verbatim recitation of the Magistrate Court's orders from the bench.

and that the Government's conduct—including the arguments made by the Government at the hearing and in the Government's briefing—were concerning.

The next morning, in an effort to avoid further damaging disclosures regarding its prosecution, the Government filed a Motion to Dismiss the case without prejudice. Dkt. 54. The Government failed to provide any reason for its decision to file a Motion to Dismiss.

On April 16, 2026, the signatory of the Petition to Seal Documents, Mr. Weir, filed a letter with Court, explaining the reasons for the Government's representations in the Petition to Seal Documents, including: (1) the statement in the Petition that there were individuals identified in the affidavit other than Mr. Adbebe was mistakenly included in the Petition; (2) there was an ongoing investigation at the time the Petition was signed because investigators had been directed to continue investigating this offense and others, including by seeking out additional witnesses and identifying video evidence; and (3) it was undetermined at the time of the signing of the arrest warrant whether Mr. Adbebe would be arrested, and "it was not until days later" that Mr. Weir "was made aware that agents were communicating with defense counsel to arrange Mr. Adbebe's self-surrender." Dkt. 56.

### RESPONSE TO LETTER

The defense appreciates the complexity of fast-moving investigations and the Government's attempt to explain the representations made in its Petition to Seal Documents. The explanations, however, raise additional questions.

13

- The Government notes that it wasn't until "days later" after the signing of the Petition to Seal Documents that Mr. Weir was made aware that agents were communicating with defense counsel to arrange Mr. Adbebe's self-surrender. But the Petition to Seal Documents was signed on January 26, 2026. Mr. Adbebe was contacted regarding self-surrender on January 27, 2026, and self-surrendered for his initial appearance on January 28, 2026.

- The Government notes that investigators had been directed to continue investigating this offense to seek out any as-yet unidentified video evidence because "the video evidence available to the government was sparse …." It is possible that Mr. Weir instructed agents to conduct further investigation. But Mr. Adbebe's phones were seized the day of his arrest, undermining concerns for destruction of evidence that would impede the investigation. And given the progression of piecemeal disclosures of video evidence in this case, it is clear that at the time of the filing of the Petition to Seal Documents, the Government could not have determined whether video evidence was sparse or not—many of the Government's own surveillance videos were not searched for or disclosed until well after Mr. Adbebe was charged. Despite this purported additional investigation, the investigators apparently did not discover the video posted to the Fox News website, which indicates that it was posted on the date of Mr. Adbebe's arrest, January 13, 2026, at 3:44pm CST. And, as noted during the hearing on April 14, there are no indications of additional investigation in the discovery provided to Mr. Adbebe to date—let alone investigation that could be impeded by a public Complaint and Arrest Warrant.

While the defense certainly appreciates that investigative steps can be "fluid" and that multiple people can be involved in a decision-making process (leaving one prosecutor or investigator unaware of all considerations), the manner in which these cases have been handled—and the larger picture of repeated misrepresentations in sworn documents and unethical government behavior—are highly atypical for norms in the District of Minnesota or the Department of Justice more broadly. This observation is not limited to this case, but the multitude of cases arising out of Operation Metro Surge.[11] It all begs the question of

---

[11] In the broader context of Operation Metro Surge, the Government has shown a stunning pattern of ignoring or blatantly disobeying court orders. *See Juan T.R. v. Noem*, No. 26-CV-0107 (PJS/DLM), 2026 WL 555601, at *2 (D. Minn. Feb. 26, 2026) (Judge

who was directing these investigations and for what reasons. There have been at least twelve Section 111(a) cases charged and then dismissed, not counting Mr. Adbebe's case. This is unprecedented. There have been multiple filings where AUSAs have filed notices of "correction" indicating they did not sign documents attributed to them—and the United States Attorney's Office has offered no explanation. Now there are questions about representations made in filings to the Court, such as these. While these questions will be mooted as to Mr. Adbebe with the dismissal of this case, the questions for the Court remain and further highlight the need for a thorough review of the Government's conduct—to determine who bears responsibility for what actions.

## ARGUMENT

"Generally, dismissal under Rule 48(a) is without prejudice." *United States v. Garcia-Lopez*, No. CR 25-437 (DWF/LIB), 2026 WL 331200, at *1 (D. Minn. Feb. 6, 2026) (citing *United States v. Oliver*, 950 F.3d 556, 562 (8th Cir. 2020)). "But [Rule 48]'s leave-of-court requirement serves 'to protect a defendant from prosecutorial harassment, *e.g.*, charging, dismissing, and recharging.'" *United States v. Rose*, No. 26-MJ-104-NEB-EMB, 2026 WL 795010, at *1 (D. Minn. Mar. 4, 2026), *report and recommendation adopted*, No. 26-MJ-104 (NEB/EMB), 2026 WL 793202 (D. Minn. Mar. 20, 2026) (quoting *United States v. Jacobo-Zavala*, 241 F.3d 1009, 1012 (8th Cir. 2001)); *see also*

---

Schiltz detailing the 210 orders the Government had violated in 143 cases in connection with Operation Metro Surge).

*United States v. Salinas*, 693 F.2d 348, 351 (5th Cir. 1982) (prosecutorial harassment "involves charging, dismissing, and subsequently commencing another prosecution at a different time or place deemed more favorable to the prosecution"). In determining whether dismissal should be with or without prejudice, the question for the Court is not whether the Government was acting in bad faith; rather, the Court assesses the effect that dismissal without prejudice has on the defendant. *United States v. Adams*, 777 F. Supp. 3d 185, 218 (S.D.N.Y. 2025). "Accordingly, although there remains a strong presumption in favor of a no-prejudice dismissal, the ultimate decision in that regard depends upon the purpose sought to be achieved by the government and its effect on the accused." *United States v. Poindexter*, 719 F. Supp. 6, 10 (D.D.C. 1989); *Garcia-Lopez*, 2026 WL 331200, at *1 (because the parties agree that the case should be dismissed, "[t]he only question remaining for the Court is whether that dismissal should be with or without prejudice"),

The reason for the Government's motion for dismissal is a key aspect of a Rule 48 motion:

> The primary purpose of the requirement that the prosecutor obtain leave of court is to prevent harassment of a defendant by a prosecutor's charging, dismissing, and recharging the defendant with a crime. *Rinaldi v. United States,* 434 U.S. 22, 29 n. 15, 98 S.Ct. 81, 85 n. 15, 54 L.Ed.2d 207 (1977) (per curiam); *United States v. Ammidown,* 497 F.2d at 620; *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.) (en banc), *cert. denied sub nom. Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965); *Woodring v. United States,* 311 F.2d 417, 424 (8th Cir.), *cert. denied sub nom. Felice v. United States,* 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414 (1963). Thus, to honor the purpose of the rule, the trial court at the very least must know the prosecutor's reasons for seeking to dismiss the indictment and the facts underlying the prosecutor's

16

> decision. *United States v. Salinas,* 693 F.2d 348, 352 (5th Cir.1982); *United States v. Ammidown,* 497 F.2d at 620.

*United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984). Indeed, Rule 48 "contemplates public exposure of the reasons for the abandonment of an indictment, information or complaint in order to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors." *Adams*, 777 F. Supp. 3d at 208 (quoting *United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*, 228 F. Supp. 483, 486 (S.D.N.Y. 1964)). Here, the Government provided no reason for its motion to dismiss the case.

"While a court is still not free to substitute its judgment for that of the prosecutor, whose decision is deemed valid, [Rule 48] has the effect of granting authority to the court in exceptional cases to reject a dismissal without prejudice—which would allow re-prosecution—if this would result in harassment of the defendant or would otherwise be contrary to the manifest public interest." *Poindexter*, 719 F. Supp. at 10 (ordering dismissal with prejudice when a no-prejudice dismissal would have subjected the defendant to "uncertainty and . . . public obloquy for an indefinite period").[12] This is such an exceptional case.

---

[12] As noted recently by one District Court, "Converting a dismissal without prejudice to one with prejudice does not raise the same separation-of-powers concerns as outright denial of a Rule 48(a) motion. Where a court grants the governments motion to dismiss a case, it respects the executive branch's primacy in matters of prosecutorial discretion. And deciding whether a dismissal should be with or without prejudice involves weighing considerations that, unlike the factors that are relevant to an exercise of prosecutorial discretion, are well within the judicial wheelhouse as a matter of institutional competence. . . . Accordingly, dismissal with prejudice can be an appropriate judicial remedy to vindicate Rule 48(a)'s purposes, including protecting the rights of the defendant." *Adams*, 777 F. Supp. 3d at 215–16.

Here, officers and agents of the federal government staged photographs of numerous protesters—including Mr. Adbebe—standing shackled next to faceless federal agents. They then posted those photographs to millions of people in an attempt at silencing criticism and protest in direct contravention of the First Amendment, severely impacting Mr. Adbebe's right to a fair trial. Mr. Adbebe moved for discovery relating to that plot in connection with possible defenses in his case.

The Government has now been ordered to produce a list of the individuals who planned and participated in the staging and social media campaign, and to produce the communications involved in the organization and execution of the scheme. They have also been ordered to investigate additional misrepresentations in sworn documents. The very day after that order was issued from the bench, the Government moved to dismiss the charges against Mr. Adbebe, providing no rationale or explanation to the Court in its Motion. It is not difficult to connect the dots between the Government's request for dismissal and its wish to avoid compliance with the Magistrate Court's order.

Based on the undisputed facts, there is a clear risk of prosecutorial harassment. Mr. Adbebe has already been used as the DOJ's and DHS's poster child for "rioters" and "anarchists," and has been subjected to trumped-up federal charges meant to intimidate him and others. In the absence of a Government rationale for dismissal—and considering the Magistrate Court's statement that the Government has otherwise acted in a manner tantamount to bad faith in other aspects of this case—there is more than a mere possibility that the Government could recharge Mr. Adbebe at a later time in the hopes of a more

favorable outcome, such as the assignment of a different magistrate judge who will not order similar disclosures.

Other courts have found similarly. In *Salinas*, 693 F.2d at 352, the prosecutor moved for Rule 48 dismissal—as was later discovered—because he did not like the jury that was selected. A week later, the Government obtained a second indictment. *Id.* 353. In dismissing the second indictment, the court foGnd that the Government had "trifled with the Rules of Criminal Procedure to harass" the defendant, and that condoning such conduct would "invite future misconduct by the Government." *Id.* So too, in *Derr*, 726 F.2d at 618, where the Government sought dismissal under Rule 48 on the premise that dismissal would "best meet the ends of justice." Six months later, the defendant was reindicted for the same criminal conduct; the defendant moved to dismiss, contending that the initial no-prejudice dismissal was in error, which the court granted. *Id.* The circuit court found that "dismissing the second indictment, in effect altering the first dismissal to one with prejudice—was appropriate" because it became apparent that the Government had only moved to dismiss because it was unprepared for trial. *Id.* at 619.

Here, the Government's motives for seeking dismissal could not be more obvious. The Court should grant dismissal of Mr. Adbebe's charge with prejudice.

## CONCLUSION

For the foregoing reasons, Mr. Adbebe respectfully requests that this case be dismissed with prejudice.

Dated: April 17, 2026

/s/ *Manda M. Sertich*
Manda M. Sertich (#0504328)
Christopher J. Markuson (0504387)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street
Suite 1500
Minneapolis, MN  55402-4400
Minneapolis, MN  55402-4400
612.492.7000
msertich@fredlaw.com
cmarkuson@fredlaw.com

***Attorneys for Defendant***